### BENNETT *et al.* v. KNAPP *et al.*

(*Supreme Court, General Term, Fifth Department.* April 11, 1890.)

BANKS AND BANKING—GENERAL DEPOSITS.

Plaintiffs, at a time when their account with defendants' intestate, a private banker, was overdrawn, offered him their draft on a distant house for discount and deposit. The accommodation being refused, it was agreed that intestate should collect the draft, and credit plaintiffs with the proceeds when received. The collection was credited to plaintiffs' general account, which was the usual course of business between the parties, the day before intestate's death, and in the mean time plaintiffs had drawn their checks against the draft, advising the payees when the account would be good for their payment. *Held*, that the draft was delivered and received for collection and credit to plaintiffs' general account, and not on special deposit. MACOMBER, J., dissenting.

On exceptions from circuit court.

Action by George W. Bennett and others against Austin K. Knapp and others. A nonsuit was granted in the circuit court, and plaintiff moves for

a new trial on a case, and exceptions ordered to be heard at general term in the first instance.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

J. H. Camp, for plaintiffs.　S. B. McIntyre, for defendants.

DWIGHT, P. J.　In this action the plaintiffs seek to charge the defendants, as for money had and received, with the avails of a draft drawn by the plaintiffs on a mercantile house in Chicago, and delivered to Lyman Lyon, a private banker at Palmyra, and by him collected and credited to their account. Two questions of fact are involved: (1) What was the agreement, express or implied, under which the draft was delivered? and (2) have the defendants received the avails of the draft to and for the use of the plaintiffs? There is no conflict of evidence, since the case rests upon the testimony of the plaintiffs themselves, in which they give their version of the conversation had by them with the defendant Knapp, who was Mr. Lyon's cashier at the time the draft was delivered, and of his subsequent admissions as to its collection and the disposition of the proceeds, and their version of the subsequent admissions of the two defendants that they had received the avails of the draft. The same testimony also discloses the previous course of dealings of the plaintiffs with Mr. Lyon; the state of their account with him at the date of the transaction in question; and the acts of the plaintiffs, in relation to the subject-matter, after the delivery of the draft. Without attempting recapitulate the evidence in detail, we do not hesitate to say that its effect is to establish the fact, in answer to the first question proposed, that the draft was delivered to Lyon for collection and deposit; that is to say, upon the agreement and understanding that, when the draft was collected, the avails should be credited to the general account of the plaintiffs, which at that time was overdrawn. The draft was for $3,700, and the amount of the overdraft was about $600. The evidence tends to show that the draft in question was first offered at the bank for discount and deposit,—that is, for immediate credit,—which was in accordance with the usual course of dealing between the parties. In this instance, however, that accommodation was refused, the cashier stating, as the plaintiff Bennett testifies, that the bank was short of funds, but offering to collect the draft, and credit the proceeds, when they should be received; and that such was the arrangement finally concluded between the parties, we have already said the evidence plainly shows. The transaction was on Wednesday, the 17th of August. Bennett testifies that Mr. Knapp told him they should not check against the draft until he had received the money on it, which would probably be about the first of the next week. The plaintiffs did, however, proceed at once to anticipate the credit of the draft by drawing their checks against it, and continued to do so through the week; at the same time cautioning their payees not to present the checks for payment until the first of the next week. Some of the checks were, however, presented on each day of the same week, and were paid. The avails of the draft were received on the evening of Saturday, the 20th, in a draft of the Commercial National Bank of Chicago on the Hanover National Bank of New York; the amount of which, less exchange or charges for collection, was immediately credited to the account of the plaintiffs, and the New York draft was on the same evening sent forward to Lyon's correspondent in New York for collection for him. The next day, Sunday, August 21st, Lyman Lyon died, and on Monday morning the plaintiff notified his late cashier that they claimed the draft and its avails as their property; that the draft had been delivered for collection only; and that its avails were a special deposit, and must not be confounded with the assets of Mr. Lyon's estate. Mr. Knapp informed them that the draft had been collected, and its avails placed to their credit, before Mr. Lyon's death. Early in October the defendants, jointly with Mrs. Lyon, were appointed administrators of Mr. Lyon's estate, and, shortly after their

appointment, the plaintiffs demanded of the two defendants the avails of the draft in question, at the same time offering to pay the amount of their overdraft, whatever it was. The plaintiffs testify that both defendants admitted that they had received the avails of the draft, but stated that they were advised that the money belonged to the estate of Mr. Lyon, and they could not give it up. In answer to the tender of the amount of the overdraft, they said that Mr. Lyon's books showed no overdraft, but a balance in favor of the plaintiffs. About a year later the plaintiffs brought this action against the two defendants for moneys had and received. It seems to us very clear, aside from any question of the sufficiency of the complaint, or of defect of parties defendant, that a verdict for the plaintiffs could not have been taken upon the evidence adduced, and that the nonsuit was properly ordered. Upon the evidence alone of the course of dealing between the parties, and of what took place at the time of the delivery of the draft, we think the balance of proof was in favor of the theory that the draft was delivered and received for collection and deposit. But when we find the plaintiffs, in avowed anticipation of the credit of the draft, proceeding at once to make their checks, upon an account already overdrawn, and advising the persons to whom the checks were given of the time when that account would probably be good for their payment, no room seems to be left for doubt or question that the plaintiffs expected credit for the avails of the draft in their general account, and that the sooner the credit was given the better. Who can believe upon this evidence that if Mr. Lyon had lived, and the bank had continued its business a few days longer, any objection would ever have been made to the credit given to the plaintiffs, or can doubt that that credit would have been speedily exhausted by the plaintiffs' checks? Bennett testifies, frankly, that the checks drawn on and after the 17th of August were drawn on the proceeds of this draft. It must have been so, and this act of the plaintiffs constituted the most satisfactory evidence of their own understanding of the agreement under which the draft was delivered to Mr. Lyon. As we have said, there was no conflict of evidence; so there was no disputed question of law. The only question for the court below was whether there was sufficient evidence in support of the plaintiffs' cause of action to warrant its submission to the jury. That question being, as we think, correctly decided, the nonsuit was properly granted.

The motion for a new trial must therefore be denied, and judgment ordered for the defendants dismissing the complaint.

CORLETT, J., concurs. MACOMBER, J., dissenting.